## Buck's Estate.

*Wills—Probate—Testamentary capacity—Undue influence—Refusal of issue.*

An issue devisavit vel non is properly refused where it appears that the will was made fourteen years before decedent's death, that for three years prior to his death the decedent lived away from the sole beneficiary under his will; that the attorney who drew the will and the two subscribing witnesses all testify to the sound mental capacity of testator, and to the fact that the beneficiary had nothing to do with the instructions as to the making of the will or its execution, and the only testimony as to the testator's condition was that he had been from early childhood a secretive, sensitive and self-willed person who avoided conversation even with friends.

Argued Oct. 29, 1913. Appeal, No. 172, Oct. T., 1913, by Anna B. Stephens, from decree of O. C. Blair Co., No. 196, O. C. 1912, refusing devisavit vel non in Estate of. D. Miles Buck, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Appeal from register of wills.
The opinion of the Superior Court states the case.

*Error assigned* was decree refusing issue devisavit vel non.

*W. C. Fletcher,* for appellant.

*Robert W. Smith,* for appellee.

OPINION BY ORLADY, J., March 12, 1914:
The decedent died January 18, 1912, and on January 31, his last will and testament was admitted to probate by the executor Jno. P. Sebring, who, under its terms was the sole legatee. The will had been executed January 10, 1898, and was prepared the previous day at

the request of the testator by Charles P. Hughes, Esq., a reputable attorney at law of the Bellefonte bar. His testimony is quite important, and describes fully the conditions under which the will was prepared. D. Miles Buck, the decedent, came to the office of his selected counsel and conferred with him alone in his private office in regard to the disposition of his business affairs. While Jno. P. Sebring came to Bellefonte with Buck he was not present at the professional interview between the decedent and his counsel, (Mr. Hughes,) who received all information in regard to the estate from his client. Other business was transacted in adjusting his business affairs, and the next day the will was prepared.

Mr. Hughes states, "There was nothing in my dealings with D. Miles Buck at this time to lead me to even consider that he was not of sound disposing mind, memory and understanding. My acquaintance with him was limited and simply embraced the drawing of the agreement, deed and will. To the best of my recollection I sent the will to him by mail. I think the crosses were made by me to indicate the place for signatures." H. C. Hoover, a subscribing witness, testified, that, "I witnessed the will, at the request of the testator at his own home, and that I considered his mental condition as good as his (the witness) own. I had known him well for four years. Worked for and talked with him. His mental condition was the same as it had always been." Miss H. M. Gates, the other subscribing witness, testified that she had lived in the same house, with the decedent as a member of the family, for a period of eighteen years, and "I was in the kitchen, and he came and wanted me to come in and sign his will; see that he signed it, and to sign it myself, and I did. I thought he was all right. I couldn't see anything wrong with him. I regarded him as rational. He just seemed as natural to talk to me as to anyone else. I never knew him to sign any paper without reading it. I witnessed other papers for him."

An appeal was taken from the decision of the register in admitting the will to probate, and a request was presented for an issue to try the questions, whether D. Miles Buck was of sound and disposing mind, and whether the execution of the will was procured by undue influence on the part of Jno. P. Sebring. A number of witnesses were called and the very most that can be gathered from their testimony, in addition to the above, was, that this testator had been from early childhood a secretive, sensitive and self-willed person, who avoided conversation even with friends, but there is not a particle of evidence to show that Sebring ever mentioned to him the disposition of his estate, or exercised any influence over him in the making of the will. The last three years of his life was passed in the home of Mrs. Stephens, the contestant, and away from Sebring, yet no change was made in its provisions.

For the reasons given by the learned trial judge under the authorities cited by him, the issue for a devisavit vel non was properly refused, and the decree entered by him is affirmed.